IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| (1) WILLIE MORGAN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| vs. | ) | |
| | ) | |
| (2) VALLEY INSURANCE COMPANY, | ) | Case No. CIV-07-799 |
| (3) VALLEY INSURANCE GROUP, | ) | |
| (4) TRINITY UNIVERSAL INSURANCE | ) | November 9, 2009 Trial Docket |
| COMPANY, AND | ) | |
| (5) UNITRIN, INC. | ) | |
| | ) | |
| Defendants. | ) | |

**PLAINTIFF'S RESPONSE AND OBJECTION TO DEFENDANT VALLEY INSURANCE
COMPANY'S MOTIONS IN LIMINE AND BRIEF IN SUPPORT**

**COMES NOW** Plaintiff, Willie Morgan, and submits to the Court his response and
objection to Defendant Valley Insurance Company's proposed Motions in Limine.   In
support of his objection, Plaintiff submits the following brief.

**BRIEF IN SUPPORT**

**PROPOSITION I**

**DEFENDANT'S CLAIM HANDLING POST-LITIGATION IS RELEVANT
AND ADMISSIBLE TO PLAINTIFF'S CLAIM FOR BAD FAITH AND
BREACH OF CONTRACT**

Defendant's Motion seeks to exclude any evidence of the conduct of the insurance
company after the lawsuit was filed.  As Plaintiff will show, he does not intend to introduce
evidence of Defendant's counsel's conduct, but conduct of the insurer, which is entirely
relevant to Plaintiff's claim of bad faith and breach of contract.

Defendant's counsel correctly cited *Buzzard v. Farmers Ins. Co.*, 824 P.2d 1105
(Okla. 1991), which states that the knowledge and belief of the insurer during the period
the claim is being reviewed is the focus of a bad faith claim.  As *Buzzard* further
acknowledges, the duty of good faith and fair dealing exists at all times when an insurer
is dealing with its insured.  *Id.* at 1108.  The insurer has an ongoing duty not to
unreasonably withhold a payment on a claim.  *Id.* at 1108-1109.  It is true an insurer can

1

resort to a legal forum and resist payment based upon a reasonable defense, but that is not what has transpired in this case. *Id.* at 1109.

Defendant insurer did not elect to litigate or resist payment in this case. Defendant simply obtained a preliminary estimate of approximately $214 to replace a battery from a stolen vehicle then force its insured to accept return of the vehicle. Defendant told its insured that the claims process would continue after the body shop supplemented the estimate. An estimate was obtained by the Plaintiff and ignored by the Defendant for over 6 months, while the claim remained open. Suit was filed and the claim remained open until a voluntary payment was made by Defendant in May 2009.

To determine the validity of a claim, the insurer must conduct an investigation reasonably appropriate under the circumstances. *Id.* at 1109. As Defendant acknowledges, the knowledge and belief of the insurer during the time period the claim is *being reviewed* is the focus of a bad faith claim. *Id.* (emphasis added).

Defendant's representatives have testified that this claim was open at all times both before and during litigation. Glendora Matthews was the claims adjuster and gave a deposition on June 18, 2008. She testified "Yes, my understanding is it is an open claim.." p. 255, l. 9. (Exhibit "1," Deposition of Glendora Matthews). Further, Melissa Newville, the regional claims manager, testified on December 2, 2008, that "I would guess that it would be open. This is an open, ongoing..." p. 26, ll. 20-21. ("Exhibit 2," Deposition of Melissa Newville). She further testified, "I would believe it'd be still open, yes." p. 27, l. 15. (Exhibit "2"). Damian Jordan also gave a deposition on December 2, 2008. He is the auto property damage team leader. He testified as follows:

> Q:   It's my understanding, Mr. Jordan, based on
>       the testimony and the things that have been submitted
>       by the parties in this case, that Mr. Morgan's claim
>       remains open, okay. Still has not been closed; still
>       pending, okay? This loss occurred in August of 2006,
>       correct?
>
> A:   Correct.

2

> Q:    So we are, I think Mr. Goolsby counted, 27
>        months that this claim has been pending, correct?
>
> A:    Correct.

p. 122, l. 22-p. 123, l. 6. (Exhibit "3," Deposition of Damian Jordan).

Joe Pierron was the SIU manager that investigated Plaintiff's claim on multiple occasions.  He gave a deposition on July 30, 2008 and stated as follows:

> Q:    Is it still an open claim,
>        to your understanding?
>
> A:    As far as I know, yes.

p. 135, ll. 8-10.  (Exhibit "4," Deposition of Joe Pierron).

Defendant relies on *Timberlake v. U.S. Fid. & Guar. Co.*, 71 F.3d 334 (10th Cir. 1995) for the proposition that defense counsel's litigation conduct is inadmissible as evidence of bad faith.  This is correct, but Defendant is missing the point.  Plaintiff is not attempting to introduce evidence in this case of counsel's conduct such as letters from counsel to adjuster, filing counter-claims, or filing motions, which were an issue in *Timberlake*. *Id.* at 339.  Plaintiff is entitled for the jury to hear evidence that Defendant, not counsel, neglected and ignored this claim since its inception.  They should also hear that Defendant never denied or accepted the claim but left it open from August 6, 2006 to May 2009, over 33 months.  Defendant did not investigate, gather additional information, or attempt to handle the open claim in accordance with its duties under Oklahoma law.

A claim for bad faith must be assessed on the facts known or knowable about the claim at the time the insured requested that the insurer perform its contractual obligation. *Sims v. Travelers Ins. Co.*, 2000 OK CIV APP 145 at ¶10.  What Defendant ignores when citing this passage is that the Plaintiff has continually requested performance throughout every stage, including litigation.  If a claim is open, it requires attention and the duty of good faith and fair dealing continues.  As *Buzzard* states, the period of time when a claim is being reviewed is the relevant focus. *Buzzard* at 1109. The duty exists at all times when

3

an insurer is dealing with its insured.  *Id.* at 1108.

In *Christian v. American Home Assurance Co.*, 577 P.2d 899 (Okla. 1977), the Oklahoma Supreme Court reversed the Trial Court and held that the insurer was under a legal duty to act in good faith and deal fairly when handling the insurance claim, and also must pay the claim promptly.  *Id.* at 905.  The Court reasoned that an insured has an expectation to prompt payment of policy benefits when he purchases a policy. Unwarranted delay precipitates the precise economic hardship the insured sought to avoid by purchase of the policy.  *Id.* at 903.  The court held that an insurance company that violates its duty, gives rise to an action in tort for which consequential, and in proper cases, punitive damages may be sought.  *Id.* at 904.

As the evidence will show, Defendant did not accept or reject Plaintiff's open claim for over 33 months, until it paid the note for the truck in May 2009.  The claim is still open at this time since Plaintiff has other contractual damages that have not been paid.  The truck was not paid off per any litigation settlement or settlement negotiations.  Defendant decided to accept the truck's value based on the information it acquired in 2006 per a CCC Valuscope appraisal.  Such evidence is not "litigation conduct" of the attorneys such as described in *Timberlake*.  It is evidence of the Defendant finally performing part of its contractual obligation and its recognizing that the duty to act fairly and in good faith is continuing regardless of litigation as *Buzzard* expressly states.

Plaintiff is not attempting to introduce any evidence of litigation tactics or strategy in defending a claim by the attorneys.  The question in this bad faith case is not whether the insurer acted fairly and in good faith in "denying the contract" but whether the Defendant acted fairly in good faith in handling the Plaintiff's claim.  As Defendant's employees repeatedly pointed out, this claim is still open.  It was not denied.  There is no case law cited by the Defendant to support the proposition that the ongoing handling of a claim is inadmissible simply because litigation commences.  To the contrary, litigation was

4

commenced because the insurance company would not do anything.  Had the Defendant evaluated the claim immediately after litigation was filed and decided to "close the file" by making Plaintiff whole under the contract as it attempted to do in May of 2009, Defendant may very well attempt to exclude all information and litigation conduct after the claim was closed.  However, that decision was not made by the insurance company and they cannot now rely upon inapposite case law to support their conclusion that the claims handling process ends when litigation begins.

For these reasons, Plaintiff respectfully requests that the Court deny Defendant's Motion in Limine to the extent it attempts to exclude evidence of the insurer's conduct, not the attorney's conduct, after litigation commenced in 2007.

**PROPOSITION II**

**THE 78 CLAIMS FILES PRODUCED BY VALLEY FROM 2006 ARE RELEVANT AND ADMISSIBLE AS EVIDENCE IN THIS CASE**

Defendant argues that referring only 12% of theft cases from the Dallas office for further investigation is not sufficient to constitute a pattern, practice or habit pursuant to Fed. R. Evid. 44(b).  Defendant uses an incorrect analysis in determining the relevance and admissibility of these other claim files. These files show a pattern of practice of referring claims to SIU, despite failing to meet their own policies and procedures for assignments to SIU.  Simply put, these claims are referred to SIU without a reasonable basis for doing so.

It is evident from these claim files that Defendant did not follow their own policies and procedures when referring their claims to SIU, which is evidence of bad faith.  What Defendant does not reveal to the Court is that within these claim files, there are multiple instances where the insurance company fails to follow its own guidelines when referring cases to the SIU department.  In fact, this occurred over 2/3 of the time out of all of these cases.  This is a clear of violation of Defendant's "Best Practices for Special Investigations" which states:

5

> The claim adjuster has a key position in the Unitrin Specialty Line insurance's efforts to deter fraud. It is the adjuster's responsibility to identify and report instances of suspected fraud. Insurance fraud profile indicators will alert the adjuster to possible fraudulent activity in a claim. All adjusters must be thoroughly familiar with the indicators of potential fraud. Refer to the list of the SIU indicators listed in the "details" section of the "claim data" page in the SIU Referral Form."[1]

The Best Practices go on to say that an adjuster must check the appropriate SIU indicators and the "details" section of the "claims data" screen. The adjusters must complete the SIU referral form appropriately, which was not done in this case and was not done in most of the SIU claims that were produced by the Defendant.

Valley no doubt recognizes the significance of the SIU Department and its impact on its insureds. The best practices go on to state that "with the claims adjuster's assistance, the SIU can help resist payment of fraudulent and non-meritorious claims, thus reducing the negative, economic impact these claims have on our company and policy holders." The Defendant must know that a referral to SIU changes the complexion of the claim from simply a property damage claim to a "investigation" of the insured and an implication of fraud. It has an emotional impact on the insured. The insurance company is essentially investigating that insured for fraud or other felonious activities. Such an act should not be taken lightly and without guidelines and restrictions. These files demonstrate a pattern that the Defendant does not place any emphasis on diligence and objectiveness when making a referral to SIU. This company demonstrates a pattern of practice of reckless referrals to SIU and admits that its policies are loose. Brooke Garza testified that she was not aware of the best practices of Unitrin as of November 2006 when referring a claim to SIU and her failure to complete these forms is due to being "lazy." Deposition of Brooke Garza at p. 41, l. 25-p. 43, l. 9. (Exhibit "6," Deposition of Brooke Garza).

The evidence developed by these claims is not as Defendant suggests that only

---

[1] Attached as Exhibit "5" is Valley 641, which is Unitrin Specialty's Best Practices for Special Investigations.

12% of all claims are sent to SIU.  The evidence demonstrates from these files that the Defendant ignores its own policies and procedures when referring and handling the SIU files.  This results in an unnecessary delay in the payment and concluding of those claims to the detriment of their insureds.  It also displays the insurance company's lack of regard for their insured's emotional and financial well-being during the time these SIU investigations are referred and eventually accomplished.

WHEREFORE, Plaintiff Willie Morgan respectfully requests the Court to overrule Defendant's Motion in Limine and grant him all other relief to which he is entitled.

/s/ Jeremy Z. Carter
Robert Todd Goolsby, OBA #12676
James L. Gibbs, II, OBA #15689
Jeremy Z. Carter, OBA#19772
GOOLSBY, PROCTOR, HEEFNER & GIBBS, P.C.
701 N. Broadway, Suite 400
Oklahoma City, OK 73102
405-524-2400 (O)
405-525-6004 (F)
Attorneys for Plaintiff Willie Morgan

## CERTIFICATE OF SERVICE

I hereby certify on October  12th  , 2009, I electronically transmitted the attached document to the Clerk of Court using the ECF System for filing and transmittal of a Notice of Electronic Filing to the following ECF registrants:

Stefan Wenzel                                      Randall G. Walters
wenzellaw@coxinet.net                              randy.walters@wbclawfirm.com

/s/ Jeremy Z. Carter